## Commonwealth ex rel. Hansen v. Warren Borough et al.

*Bordwell & Eldred,* for relator.

*Sidney D. Blackman,* borough solicitor, and *John Siggins, Jr.,* for defendants.

ARIRD, P. J., July 1, 1932.—On December 9, 1930, a certain agreement made between attorneys was filed in the above-entitled case. This agreement, in part, reads as follows:

"C. Elmer Hansen, the relator, by Bordwell & Eldred, his attorneys, and the Burgess and Town Council of the Borough of Warren, the respondent, by Sidney D. Blackman, its solicitor, joined in by John Siggins, Jr., solicitor for the Board of Health of Warren Borough, Pa., agree that this case may be entered in the said court with the same force and effect as though a writ of mandamus had duly issued therein, had been served and a return thereto filed and hearing been had thereon and from writ return and testimony upon the hearing the facts hereinafter stated were found; and that if the court be of the opinion therefrom that the inspection and registration fee hereinafter mentioned may lawfully be required before the issuance of the permit hereinafter referred to, then that judgment may be entered for the respondent, and that if said permit should be issued under the law without the payment of said inspection and registration fee, then that judgment may be entered for the plaintiff."

It was further agreed that part of section four of an ordinance, No. 164, reads as follows:

"It is, among other things, provided in section four hereof that no person shall sell milk in the Borough of Warren, Pa., without a permit issued by the Board of Health, and that if a person desires to sell or deliver milk in the Borough of Warren, Pa., he shall annually first make application to the Board of Health for inspection of the premises where the milk intended for sale or delivery is produced or pasteurized, and shall pay into the treasury of Warren Borough, Pa., an inspection and registration fee of five dollars for such inspection and registration, and shall then make application for a permit on a printed form to be furnished by said Board of Health."

It was further agreed that the board of health of said borough causes semi-annual inspections to be made of all dairies and farms from which milk is sold in the Borough of Warren, and other inspections of dairies and farms from time to time, and, in addition thereto, is put to considerable expense in handling permits for sale of milk, for clerical services, printing of applications and blanks, permits, postage and other items, and the expense so incurred will exceed the amount which will be realized by the said board of health from the five-dollar fee to be paid by each dealer, so that the said payment does not fully cover the cost of such inspection and expenses.

It also appears that the ordinance of the Burgess and Town Council of the Borough of Warren was adopted January 6, 1930, and known, as above stated, as Ordinance No. 164, providing certain regulations to regulate and govern the production, distribution and sale of milk in the Borough of Warren, Pa., etc. It appears that this ordinance was passed by council January 6, 1930, over the veto of L. E. Chapman, Chief Burgess.

Section sixteen of the Ordinance No. 164 was amended to read as follows: "This ordinance shall become effective on September 1, 1930."

The controversy in this case relates to the question of paying the five dollars. Hansen, the plaintiff, is a farmer, who resides in Warren County, Pa., and produces from his farm about seventy quarts of milk daily, which he desires to sell in the Borough of Warren. Hansen filed an application for a permit, but refused to make the payment of five dollars then demanded of him for inspection and registration fee as required by said ordinance. Under the facts as stipulated, the case was called for argument and attorneys for plaintiff and defendant presented arguments followed by briefs.

In 1928, a case stated similar to this was presented to our court by the same parties, argued and decided. This opinion was entered April 15, 1928. At the time the former case was decided, section 2920 of The General Borough

Act of 1927 provided as follows: "It shall be unlawful for any borough to levy or collect any license fee from any farmer who sells his own produce in or about the streets of any borough."

By the Act of May 8, 1929, P. L. 1636, section fifteen, the above-quoted section, was so amended as to read: "It shall be unlawful for any borough to levy or collect any license fee from any person who sells, in or about the streets of any borough, vegetables or animal products raised on his or her own land."

At the time of the former decision, the ordinance of Warren Borough then before the court for interpretation provided: "Each person receiving a permit to sell milk shall pay into the treasury of the Borough of Warren, Pa., through the burgess for the use of the Board of Health of Warren, Pa., the sum of five dollars."

Now, in lieu of the above ordinance, a new ordinance has been substituted which, in part, reads as follows: "Each person desiring to sell or deliver milk in the Borough of Warren, Pa., shall . . . pay into the treasury of Warren Borough an inspection and registration fee of five dollars for such inspection and registration."

It will be noted that the amendment to the act of assembly involved did not change the prohibition of boroughs from levying license fees on farmers for selling milk in the borough. It has, however, eliminated a questionable feature in that it has broadened the act to include persons other than farmers, and so removed a possible objection that the act might be class legislation. It also makes more certain what is meant by produce, so that there is no question but that the prohibition of a license fee upon milk producers is included.

Counsel for defendant cites section one of the Act of April 20, 1869, P. L. 81, which has not been repealed, and, in part, reads as follows: "The councils of cities and boroughs in this Commonwealth be and they are hereby authorized and empowered to provide for the inspection of milk, under such rules and regulations as will protect the people from adulteration and dilution of the same."

Now in this act of assembly above quoted there is not even a suggestion that the town councils may charge the farmers for an inspection of the farmers' premises and registration. Using the words "inspection and registration," in our opinion, is simply an evasion of the law which provides that "It shall be unlawful for any borough to levy or collect any license fee from any person who sells in or about the streets of any borough vegetables or animal products raised on his or her own land."

Now the borough authorities in this case are attempting to charge the plaintiff for inspecting his premises and the expense in handling permits for the sale of milk, for clerical service, printing of applications and blanks, permits, postage and other items the sum of five dollars for simply two inspections, service, etc., and at the same time the defendant alleges the expense so incurred will exceed the amount which will be realized by said board of health by a five-dollar fee to be paid by each dealer, so that said payment does not fully cover the cost of such inspection and expense.

In our opinion, it is immaterial under what name or names the borough authorities attempt to collect this license fee from the plaintiff. Again, if the court should decide in favor of the defendant that this amount can be collected from plaintiff and it is not sufficient to cover the inspection and registration fee (i. e., simply two inspections, etc.), then the defendant would be justified in charging the plaintiff a sufficient amount to cover the two inspections, registration fee, etc., but also then the borough authorities would have

a right to make more than two inspections each year and charge the farmer for additional inspections with additional cost for clerical service, printing, postage, etc.

We have no quarrel with the act of assembly passed in 1869 authorizing the borough councils to provide for inspections of milk, but, as formerly stated in this opinion, there is not even a suggestion in that act of assembly that they can charge the farmer for such service, and, again, section 2920 of the General Borough Act of 1927 states that it is unlawful for a borough to levy or collect any license fee from any farmer selling his own produce, etc. And then, again, this act was amended by the Act of May 8, 1929, where the law declares that it shall be unlawful in any borough to levy or collect any license fee from any person who sells in and about the streets of any borough vegetables or animal products raised on his or her own land. In our opinion, the borough authorities are asking the court to make laws adverse to the law enacted by our legislature, i. e., relating to collecting money from farmers for selling in the borough produce raised on their own premises.

Two years ago in our court the same question was raised between the same parties. The court wrote an opinion and found adversely to the defendant's claim or position. Since that time the legislature has met, and even the legislature is in session at the present time, and if the borough authorities were acting in good faith, why not have a law enacted by our legislature that will give boroughs permission to evade the laws as now passed and enact a law so that any one who runs can read.

We have no quarrel with the defendant on the law relating to police regulations, nor relating to registration and inspection, but all of those requirements are for the protection of the people residing in the borough. Ergo, the borough should pay for the protection of its own people. In our opinion, it cannot be successfully contradicted that milk is a necessity, and the people in a borough must necessarily depend upon the farmers, and usually depend upon the farmers in the immediate vicinity of such borough; and so long as the farmers are willing to supply this necessary commodity, why should they be taxed for furnishing the same?

We have quoted section 2920 of the Act of 1927, and we have also quoted the amendment of 1929, but in looking further at the Act of 1927, under article twenty-nine, we find this article relates to license and license fees as follows:

"Article twenty-nine.—License and license fees.

"(a) Auctioneers. Section 2901. . . .

"(b) Foreign dealers. Section 2905. . . .

"(c) Transient retail merchants. Section 2910. . . ."

Now the part in controversy is a part or portion of section four of said ordinance, which is found in the last paragraph of section four, beginning:

"Each person desiring to sell or deliver milk in the Borough of Warren, Pa., shall annually first make application to the board of health for inspection of the premises where the milk intended for sale or delivery is produced or pasteurized, and shall pay into the treasury of Warren Borough an inspection and registration fee of five dollars for such inspection and registration," etc.

Now the last two lines of the above paragraph read as follows: "shall pay into the treasury of Warren Borough an inspection and registration *fee* of five dollars for such inspection and registration."

Now what is the difference whether the borough authorities call this an inspection and registration fee or a license fee? Then the act provides, instead of saying the borough authorities shall issue a license, they say they

shall issue a permit, but what is the difference whether they call that a permit or a license? Of course, if they call it a license, then it must be designated as a license fee, which our legislature says it is unlawful for a borough to collect. Along the same lines of reasoning, if a farmer should want to sell buttermilk or cottage cheese in the borough, which are products of milk, then he must necessarily pay along the same lines.

In our General Borough Act of May 4, 1927, P. L. 519, article twenty-nine provides where boroughs may charge license and license fees. As formerly stated:

"(a) Auctioneers. . . .

"(b) Foreign dealers. . . .

"(c) Transient retail merchants. . . . [with the very proviso] Provided, however, that nothing herein contained shall apply to farmers selling their own produce."

Now taking into consideration section 2920 of the Act of 1927 and its amendment in 1929 with the part or portion of the act just above quoted, it certainly must have been the intention of the legislature to protect the farmer from paying a tax or license fee for selling in the borough the products of his own premises.

In the argument of this case, counsel for defendant attempted to show that five dollars is a reasonable charge. Then, if the borough authorities should double or treble these charges, the farmer must necessarily come into court and have the court determine whether or not such charges are reasonable, but undoubtedly the borough authorities could easily prove that any charges the borough authorities would make against the farmer would be reasonable charges.

Again, in our opinion, this case is intended to make a test case by charging a small or reasonable fee against the farmer and changing the name from tax or fee to inspection and registration fee, i. e., that the borough authorities in this very plausible manner are asking the court to do the very thing for which there is no law, and the borough authorities dare not attempt to have such a law enacted by our legislature.

The syllabus of Phœnixville Borough v. Little, 24 Dist. R. 536, is as follows:

"Farmers producing the milk which they sell are not required to pay a license fee under the Act of April 22, 1903, P. L. 258, notwithstanding a borough ordinance that requires such a payment, but they must comply with all other requirements of the ordinance. . . ."

Frantz v. Allentown, 6 Lehigh Co. L. J. 173, holds that a city ordinance which provides for a tax or license fee of five dollars per year on dealers of milk and other products is void in so far as it requires farmers in selling their own products to pay a tax or license.

There is one fact of which we may be certain, and that is, if our courts let down the bars and open the gates so that borough councils can begin to tax the farmers for inspection and registration, then the small producer, or farmer who has a limited supply of farm products, will be prohibited from selling his produce in boroughs.

We find under section four of the ordinance the following:

"No person shall sell milk in the Borough of Warren, Pa., without a permit issued by the board of health, nor otherwise than in accordance with the terms of said permit, the regulations of said board of health and the ordinances of said Warren Borough as the same now are or may be hereafter adopted or enacted."

The very language of the latter part of this section clearly shows that the borough ordinance may hereafter be changed. The ordinance further states "that the applicant shall then make application for a permit on a printed form to be furnished by said board of health. . . . Each permit to sell milk shall be dated September 1st and shall be valid for one year."

Now the point is here, if the plaintiff, Hansen, will pay five dollars for a permit, then the borough authorities will issue him a license to sell milk in the Borough of Warren for a period of one year. Ergo, the borough authorities are using the words "inspection and registration fee" simply as a subterfuge to collect from the plaintiff a license fee. If the borough authorities are permitted to charge five dollars for two inspections, clerical service, stationery, postage, etc. (which they allege does not cover the expense), then where is the limit to the amount that the borough authorities may charge the farmer for a license to sell his farm products in the borough? Under this very ordinance in controversy the borough could make additional inspections and additional cost for clerical service, printing, etc. This attempted evasion of the law by the borough is simply a start, or a wedge, so that in future the borough would have authority to tax the farmer for selling vegetables or animal products raised on his own land, which, under the act of our legislature, is unlawful.

Now what is a permit?

A permit is a license granted to some individual, etc.

A licensee is one to whom a license is granted.

The noun "permit" implies a formal written permission.

"Permit" as a verb means to give or grant permission or to license a person to do an act.

Now what is a license?

A license is a permission to do something.

A license is a written or printed certificate of a legal permit.

A license is simply a permission or authority to do something.

A license to take timber would permit a licensee to go on the land and cut and remove the timber specified in the license.

The words "license" and "permit" are frequently used as synonyms. Webster's definition for the word "license" is as follows: "Authority or liberty given to do or forbear any act, especially a formal permit from the public authorities to perform certain acts." A license is especially the granting of a special privilege to one or more persons.

If the borough authorities grant a permit to the plaintiff to sell milk in the Borough of Warren, that is nothing more nor less than a license to sell the same, and for this permit or license the defendant attempts to collect a license fee of five dollars, which the act of assembly declares is unlawful. As the act of assembly steps in and states that it shall be unlawful for any borough to levy or collect any license fee from the farmer who sells his own produce in the streets, etc., and the plaintiff, C. Elmer Hansen, is a farmer, who produces the milk which he sells in Warren Borough, in our opinion, under the law, neither the Town Council of the Borough of Warren nor the Board of Health of the Borough of Warren is vested with authority to collect five dollars from the plaintiff, C. Elmer Hansen, for a permit to sell milk in the Borough of Warren, which is nothing more nor less than a license fee.

This ordinance provides that "if a person desires to sell or deliver milk in the Borough of Warren, Pa., he shall annually first make application to the board of health for inspection of the premises where the milk intended for sale or delivery is produced or pasteurized."

Now under this clause of the ordinance, the borough authorities compel the farmer to make an application to the board of health for an inspection of the farmer's premises. We fail to comprehend from what source the borough has authority to enact such law and compel the farmer to pay the same. This leaves the question of inspection optional with the borough. The farmer would be powerless so far as enforcing an inspection of that character, unless through a court of equity.

While we appreciate that the borough is authorized and empowered to provide for the inspection of milk, there is no suggestion in this act that borough authorities may make an inspection of the farmer's premises and charge him for such service in order to secure a license to sell the products of his farm in said borough. In this case, it appears that Mr. Hansen, the plaintiff, had no objection to the manner in which the borough authorities made the inspection of milk, but he did object to paying a license fee for selling his milk in the Borough of Warren. This question of inspection simply leads up to where the borough authorities may charge the farmer a license fee for permission to sell the products of his farm in said borough and continue to add more inspections and more cost and compel the farmer to pay for the same.

Now if it were lawful for the borough authorities to charge the farmer a license fee, that license fee so charged would naturally include the very items of expense which the borough authorities are now claiming the farmer should pay.

Therefore, judgment is entered in favor of the plaintiff, C. Elmer Hansen, and against the defendants, the Burgess and Town Council of the Borough of Warren and the Board of Health of Warren Borough, Pa.

From Joseph H. Goldstein, Warren, Pa.